O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **HARVEY TURNER,** | ) | **NO. CV 14-00746-MAN** |
| **Petitioner,** | ) | **ORDER:  DISMISSING PETITION** |
| **v.** | ) | **WITHOUT PREJUDICE; AND DENYING** |
| **MILUSNIC,** | ) | **CERTIFICATE OF APPEALABILITY** |
| **Respondent.** | ) | |

On January 30, 2014, Petitioner, a federal prisoner then incarcerated at the Federal Correctional Complex in Adelanto, California, filed a habeas petition in this district pursuant to 28 U.S.C. § 2241.  The petition sought habeas relief with respect to Petitioner's sentence stemming from his conviction sustained in the United States District Court for the Northern District of Illinois (the "Sentencing Court") in Case No. 04-CR-00930 (the "Conviction" and/or "Sentence").[1]

On February 4, 2014, the Court ordered that Respondent file and serve an Answer to the petition.  On February 18, 2014, Petitioner filed a request to amend the petition to allege

---

[1] The information regarding the Conviction, the Sentence, and the procedural background set forth herein is based on information publically available through WESTLAW and the PACER system.  Specifically, pursuant to Rule 201 of the Federal Rules of Evidence, the Court takes judicial notice of the electronic records, dockets, and case decisions available through the PACER system and/or WESTLAW for this Court and various United States Courts of Appeals and United States District Courts.

additional claims.  On February 20, 2014, the Court granted Petitioner's request and deemed the request and the petition together to constitute Petitioner's First Amended Petition ("Petition").

On April 4, 2014, Respondent filed an Answer to the Petition with supporting exhibits.  On April 7, 2014, Respondent filed an application to file Exhibit 28 to the Answer under seal, which the Court granted on April 8, 2014.  On April 30, 2014, Petitioner filed his Reply.

The matter is fully briefed and under submission to the Court.  For the reasons set forth below, the Court concludes that jurisdiction over the Petition is lacking, and thus, this action must be dismissed without prejudice.[2]

**BACKGROUND**

On October 21, 2004, Petitioner was indicted for the crimes of being a felon in possession of a firearm (Count One), possession with the intent to distribute a mixture containing cocaine base (Count Two), and possession of firearms in furtherance of a drug trafficking crime (Count Three).  (*See* Conviction Docket No. 1; Answer Ex. 2.)  On April 7, 2005, a superseding indictment issued that charged the same three crimes with an added allegation in Count Two that the drug involved was crack cocaine.  (Answer Ex. 3.)

On April 22, 2005, Petitioner pleaded guilty to all three counts.  (*See* Conviction Docket No. 53; United States v. Turner, 191 Fed. Appx. 488, 489 (7th Cir. Aug. 23, 2006).)  Before taking Petitioner's guilty plea, the Sentencing Court asked Petitioner various questions under oath and Petitioner stated, *inter alia*, that he:  had enough time to speak with his lawyer; was satisfied with his lawyer's performance; had read the indictment, spoken with his lawyer about it, and

---

[2]     As of April 7, 2014, all parties had consented to have this case proceed to final judgment before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b).

1    understood the nature of the charges; understood his rights, which the Sentencing Court
2    enumerated for him; and understood he would be waiving those rights by pleading guilty.
3    (Answer Ex. 4 at 35-42.)  After the prosecutor set forth the maximum and minimum penalties
4    Petitioner faced, Petitioner stated that he understood them.  (*Id.* at 42-44.)  The prosecutor
5    explained his preliminary sentencing calculations with respect to Petitioner's advisory Guidelines
6    sentence, and Petitioner's counsel stated that he agreed with the calculations.  (*Id.* at 46.)  The
7    Sentencing Court explained to Petitioner that, under the preliminary calculations, he would have
8    an offense level of 35, a criminal history category of VI, and a corresponding Guidelines range of
9    292 to 365 months in prison, but it would be up to the Court at the time of sentencing to
10   determine the appropriate Guidelines range and actual sentence, and Petitioner stated that he
11   understood.  (*Id.* at 46-47.)  After further proceedings to determine the voluntariness of
12   Petitioner's plea and the Government's proffer of the evidence that would be adduced if the case
13   went to trial, Petitioner pleaded guilty to each of the three counts charged, and the Sentencing
14   Court accepted the plea.  (*Id.* at 47-53.)

15

16        Following Petitioner's plea, he filed a motion for new counsel, which was granted.
17   Petitioner's *pro se* motion for leave to file a motion to withdraw his guilty plea was denied without
18   prejudice to its renewal once his new counsel was appointed.  (Answer, Ex. 1 at 11.)  At a July
19   26, 2005 status conference, Petitioner's new counsel advised the Sentencing Court that, based
20   on his review of the record and discussions with Petitioner, there was no basis for withdrawing
21   the guilty plea, and counsel would not be filing a motion to do so.  (Answer Ex. 5 at 57-58; *see*
22   *also id.* at 123-24.)  After Petitioner was examined and cross-examined, the matter was set for
23   sentencing.  (*Id.* at 82-83.)

24

25        At sentencing, Petitioner's counsel stated that "[n]o corrections" were needed to the
26
27
28

3

Presentence Investigation Report prepared by the United States Probation Office ("PSR"),[3] although with respect to one of Petitioner's convictions (aggravated discharge of a firearm), counsel noted that Petitioner was simply present with the shooter and was not the actual shooter, and this was "the one thing that [Petitioner] did point out when [counsel] did discuss his criminal history with him." (Answer, Ex. 6 at 87-91.)  During his presentence interview, Petitioner acknowledged that all of the information set forth in the superseding indictment is true and correct. (Answer Ex. 28 at 444.)  The Sentencing Court concluded that Petitioner is a career offender "for the reasons set forth" in the PSR, and that he "clearly qualifie[d] under 4B1.1 [the career offender provision of the U.S. Sentencing Guidelines], which automatically increase[d] his Criminal History Category to VI." (Answer Ex. 6 at 109.)  The Sentencing Court afforded Petitioner "a two-point reduction for acceptance of responsibility." (*Id.* at 121.)

The Sentencing Court addressed Petitioner's earlier *pro se* motion for leave to withdraw his guilty plea and specifically discussed the possibility that Petitioner might complain that his plea resulted from ineffective assistance provided by his prior counsel.  The Sentencing Court noted that, no actual motion to withdraw the plea was pending before it, any such motion would be rejected as baseless given the confirmation the Court received, at the time of the plea, that Petitioner was satisfied with counsel and his plea was knowing and voluntary.  (Answer Ex. 6 at 123-26.)

The Sentencing Court and the parties discussed the applicable Guidelines range sentence, which appeared to be 292 to 365 months for Counts One and Two, with a consecutive 60 months sentence for Count Three.  Petitioner's counsel argued for the imposition of a sentence of no more

---

[3]      The PSR was filed under seal in this action, because it contains personal identifying information about Petitioner and the redaction of such confidential information would be difficult to accomplish.  However, the PSR also contains content that would not warrant an under seal filing.  (Answer Ex. 28; *see also* Docket No. 15.)  The Court will allude to the contents of the PSR only to the extent that they do not constitute matters that were the basis for filing the document under seal, *i.e.,* that they do not constitute personal identifying information.

than 292 months, and the parties discussed whether the Count Three sentence was encompassed within the 292 to 365 months Guidelines range.   (Answer Ex. 6 at 131, 147-48.)   After a continuance of the sentencing hearing, the Sentencing Court sentenced Petitioner to 292 months of imprisonment, the low end of the applicable Guidelines range, which was comprised of 180 months for Count One, 60 months for Count Two (with 52 months to run consecutively), and 60 months for Count Three to run consecutively. (Answer Ex. 8; *see also* Conviction Docket Nos. 76, 86.)

Petitioner appealed.  His appellate counsel filed an *Anders* brief and sought to withdraw on the ground that counsel could not discern a nonfrivolous issue to pursue, and Petitioner filed his own brief.  The Seventh Circuit considered the potential issues raised, and found:  any claim that Petitioner's guilty plea resulted from the ineffective assistance of his counsel "likely would be frivolous"; Petitioner's suggestion that his guilty plea was involuntary for any other reason was "plainly frivolous"; and it would be "frivolous" to claim that Petitioner's 292 months sentence was unreasonable.  Turner, 191 Fed. Appx. at 489-90.

On January 29, 2007, Petitioner filed a 28 U.S.C. § 2255 Motion in the Sentencing Court, in Case No. 07-CV-00549 (the "Section 2255 Motion").  (Answer Ex. 9.)  Petitioner raised two claims in the Section 2255 Motion, namely, that:  his trial counsel provided ineffective assistance by failing to interview relevant witnesses and breaching the attorney-client privilege by disclosing certain facts to the government; and Petitioner was sentenced as a career offender improperly, because his aggravated discharge of a firearm conviction was dismissed and his drug conviction was inadequate factually.  Petitioner argued that:  the Sentencing Court relied on prior convictions that were not appropriate for consideration; he does not have the requisite number of prior convictions to establish that he is a career offender; and it was unconstitutional for the Sentencing Court to apply 18 U.S.C. § 924(e) (the Armed Career Criminal Act, or ACCA) in sentencing Petitioner.  (*Id., passim.*)  On April 26, 2007, the Sentencing Court denied the Section 2255 Motion, finding, *inter alia*, that:  Petitioner's ineffective assistance claim failed on the prejudice

prong, because he voluntarily pleaded guilty; and his sentencing claim failed, because he had admitted his career offender status at the time he was sentenced.  (Answer Ex. 11.)  Petitioner appealed the denial of the Section 2255 Motion, and his appeal was dismissed on procedural grounds.  (Section 2255 Motion Docket Nos. 18, 27.)

On March 2, 2010, Petitioner filed a motion in the Sentencing Court to correct his sentence pursuant to Rule 36 of the Federal Rules of Criminal Procedure ("Rule 36 Motion").  In the Rule 36 Motion, Petitioner argued that the Sentencing Court had been provided with misinformation regarding his 1994 Illinois state court conviction for aggravated discharge of a firearm[4] -- one of the prior offenses that resulted in the Sentencing Court's finding that Petitioner was a career offender and his related sentence.  (Answer Ex. 12.)  On September 21, 2010, the Sentencing Court dismissed the Rule 36 Motion for lack of jurisdiction, finding that Petitioner sought substantive relief not available under Rule 36.  (Answer Ex. 14.)

On October 25, 2010, Petitioner filed a habeas petition, pursuant to 28 U.S.C. § 2241, in the United States District Court for the District of Minnesota, in Case No. 10-CV-04353-JNE-SER (the "First Section 2241 Petition").  The First Section 2241 Petition argued that the Supreme Court's decisions in Begay v. United States, 128 S. Ct. 1581 (2008), and Johnson v. United States, 130 S. Ct. 1265 (2010), required that he be resentenced without any career offender/ACCA enhancements.  More particularly, Petitioner argued that, based on these two decisions, his prior convictions in Illinois state court for the aggravated discharge of a firearm and aggravated battery no longer could be considered "violent felonies" under the ACCA.  Petitioner argued that he could not bring a successive Section 2255 motion based on the Begay and Johnson decisions, and thus, the Section 2255 remedy was inadequate and ineffective and he was entitled to pursue relief

---

[4]     Petitioner asserted, falsely, that the transcript copy appended to the Rule 36 Motion proved that he "**did not** plead guilty to **aggravated discharge of a firearm**."  (Answer Ex. 12 at 219.)  In fact, the appended transcript conclusively proves that Petitioner *did* plead guilty to this crime and two other felony crimes, namely, unlawful use of weapons and illegal discharge of a firearm.  (*Id.* at 221-24, 227.)

under Section 2241.[5]  (Answer Ex. 17.)  On October 31, 2011, the District of Minnesota dismissed the First Section 2241 Petition for lack of jurisdiction, finding that:  Section 2241 did not provide a remedy for a claim, such as that brought by Petitioner, that a defendant is actually innocent of the sentence he received, rather than of the crime of which he was convicted; and Petitioner had not demonstrated that the Section 2255 remedy was inadequate or ineffective.  (Answer Ex. 20.)  Petitioner did not appeal.

On November 28, 2011, Petitioner filed a mandamus petition in the Seventh Circuit, in Case No. 11-3654 ("Mandamus Petition").  The Mandamus Petition argued that the Sentencing Court exceeded its jurisdiction in utilizing Petitioner's prior convictions -- for aggravated battery, aggravated discharge of a firearm, and possession with intent to deliver -- to determine that he was a career offender and to sentence him accordingly.  (Mandamus Petition Docket No. 1.)  On February 9, 2012, the Seventh Circuit denied the Mandamus Petition.  (*Id.*, No. 9.)

On April 2, 2012, Petitioner filed a motion in the Sentencing Court to vacate his sentence or strike his guilty plea pursuant to Rule 52(b) of the Federal Rules of Criminal Procedure ("Rule 52(b) Motion").  (Answer Ex. 15.)  Relying on the Seventh Circuit's decisions in Buchmeier v. United States, 581 F.3d 561 (7th Cir. 2009), and United States v. Burnett, 641 F.3d 894 (7th Cir. 2011), Petitioner argued that his sentence was unlawfully enhanced under the ACCA, because he had received a notice that his civil rights were restored in connection with certain of his earlier Illinois state court convictions, and thus, his prior convictions for aggravated battery and aggravated discharge of a firearm could not serve as a basis for finding him to be a career offender and he should be allowed to withdraw his guilty plea.  (*Id.*)  On April 10, 2012, the Sentencing Court dismissed the Rule 52(b) Motion on the ground that it was a successive Section 2255 motion and Petitioner had not obtained leave from the Seventh Circuit, as is required, to

---

[5]    As discussed *infra*, this claim is essentially the same as one of the claims alleged in the instant Petition.

bring it.  (Answer Ex. 16.)

On April 30, 2012, Petitioner filed an application in the Seventh Circuit, in Case No. 12-2050, for leave to file a second or successive Section 2255 motion.  The application made the same argument raised in the Rule 52(b) Motion.  (Case No. 12-2050 Docket No. 1.)  On May 3, 2012, the Seventh Circuit denied the application.  (*Id.* No. 2.)

On June 4, 2012, Petitioner filed another application in the Seventh Circuit, in Case No. 12-2326, for leave to file a second or successive Section 2255 motion.  This application repeated the Buchmeier/Burnett argument Petitioner had previously raised.  (Case No. 12-2326 Docket No. 1.)  On June 8, 2012, the Seventh Circuit denied the application.  (*Id.* No. 2.)

On August 21, 2012, Petitioner filed another Section 2241 petition in the District of Minnesota, in Case No. 12-CV-02035-JNE-SER (the "Second Section 2241 Petition").  The Second Section 2241 Petition raised the same claim made in the First Section 2241 Petition, *i.e.*, that under the Supreme Court's decisions in Begay and Johnson, Petitioner was entitled to be resentenced without being treated as a  career offender.  Petitioner further argued that his sentence constituted a miscarriage of justice, because it exceeded the statutory maximum for his underlying crime.  (Answer Ex. 21.)  On September 27, 2012, a Report and Recommendation issued, which concluded that the Second Section 2241 Petition should be dismissed for lack of jurisdiction for the same reasons that the First Section 2241 Petition was dismissed (*i.e.,* that there was no Section 2241 jurisdiction, because Petitioner had not shown that the Section 2255 remedy was inadequate and ineffective).  (Answer Ex. 22.)  On October 25, 2012, the Report and Recommendation was adopted and the Second Section 2241 Petition was dismissed for lack of jurisdiction on November 1, 2012.  (Answer Ex. 23.)  Petitioner did not appeal.

On January 14, 2013, Petitioner filed a Section 2241 petition in the United States District Court for the Southern District of Indiana, in Case No. 13-CV 00015-WTL-WGH (the "Third Section

2241 Petition").  The Third Section 2241 Petition raised the same Begay/Johnson argument made in the First and Second Section 2241 Petitions filed in the District of Minnesota, *to wit*, that under these Supreme Court decisions, Petitioner's prior convictions could not be utilized to treat him as a career offender, and the Section 2255 remedy was inadequate and ineffective, because these two decisions were not available when the original Section 2255 Motion was filed.  Petitioner again argued, *inter alia*, that his Illinois state court aggravated battery conviction was improperly utilized as a prior conviction for sentencing purposes, because his charge was brought under the portion of the Illinois statute prohibiting "insulting or provoking in a public place, not the section prohibiting causing bodily harm." (Answer Ex. 24.)  In its response to the Section 2241 petition, the Government produced the criminal records underlying Petitioner's aggravated battery conviction, which showed that, in fact, Petitioner had been charged with, and convicted of, the form of aggravated battery based upon knowingly causing bodily harm by striking the victim with a blunt object.  (Answer Ex. 25 at 372-73, 425-28; hereafter, the "Illinois Aggravated Battery Conviction.")  On September 16, 2013, the Southern District of Indiana dismissed the Third Section 2241 Petition, finding that:  it raised the same claims considered in the two prior Section 2241 proceedings brought by Petitioner in the District of Minnesota; and the Third Section 2241 Petition was successive and must be dismissed, because Petitioner already had "sought relief pursuant to 28 U.S.C. § 2241 under circumstances which do not permit or justify the use of that remedy." (Answer Ex. 26.)  Petitioner appealed the September 16, 2013 Order, but the Seventh Circuit dismissed his appeal on November 22, 2013, based upon his failure to pay the filing fee (Case No. 13-3295).  (Answer Ex. 29.)

## PETITIONER'S CLAIMS

The instant Petition -- Petitioner's fourth Section 2241 petition -- raises some of the same claims raised in his prior three Section 2241 petitions filed in the Districts of Indiana and Minnesota and in his Rule 52(b) Motion, and in each case, his assertion of those claims was found to constitute an unauthorized successive Section 2255 motion.  Petitioner again argues that, under

two Supreme Court decisions[6] and the Seventh Circuit's <u>Buchmeier</u> and <u>Burnett</u> decisions, his prior convictions do not count as "violent felonies" for purposes of federal career offender and ACCA enhancement provisions and he should be resentenced without any career offender enhancement. He again argues that his career offender sentence exceeds the statutory maximum for the crime of which he was convicted.  Petitioner also repeats his argument that, because these Supreme Court decisions were not available at the time he filed his Section 2255 Motion, the Section 2255 remedy is inadequate and ineffective and he should be allowed to raise his claims under Section 2241.  Here, however, he has added three interrelated claims apparently raised for the first time.

More specifically, as his first claim, Petitioner argues that his Illinois Aggravated Battery Conviction may not serve as a basis for his enhanced sentence, because it no longer counts as a "violent felony" under the ACCA.  He argues that, under the applicable Illinois statute, aggravated battery can be committed by causing great bodily harm or by a "simple" battery committed in a public place of accommodation, such as by making contact of an insulting or provoking nature.  Petitioner asserts that the charging document for the Illinois Aggravated Battery Conviction proves that he was charged with nothing more than "contact of an invoking [*sic*] nature with the victim in a public place of accommodation," and thus, he was not charged under the portion of the statute prohibiting batteries involving bodily harm.  (Original Petition at 2-4.)  Petitioner asserts that, therefore:  his sentence is in excess of the prescribed statutory maximum under ACCA, because his Illinois Aggravated Battery Conviction does not constitute a "violent felony"; and his sentence violates the Sixth Amendment pursuant to <u>Apprendi v. New Jersey</u>, 120 U.S. 2348 (2000).  (*Id.* at 5.)

As his second claim, Petitioner argues that his ACCA-enhanced sentence is improper, because he received a notice of rights restoration with respect to three of his prior Illinois state

---

[6]      In his prior Section 2241 petitions, Petitioner relied on <u>Begay</u> and <u>Johnson</u>.  In the instant Petition, he again relies on <u>Johnson</u>, but not <u>Begay</u>, and now cites <u>Descamps v. United States</u>, 133 S. Ct. 2276 (2013).

convictions within the meaning of 18 U.S.C. § 921(a)(20).  (Original Petition at 6-7.)

As his third claim, Petitioner asserts that he is "actually innocent" of two of the charges of which he was convicted in the Sentencing Court, specifically, the violations of 18 U.S.C. § 922(g)(1) (Count One) and 18 U.S.C. § 924(c)(1)(A) (Count Three).  With respect to the Section 924(c)(1)(A) conviction, Petitioner contends that the Government failed to meet its burden of proving all elements of that crime.  (February 18, 2014 filing at 2-4, 7.)

As his fourth claim, Petitioner contends that his guilty plea in the Sentencing Court to the Section 924(c)(1)(A) charge was involuntary and unknowing, and was the product of coercion and threats, because the Government failed to concede that he was innocent of that charge and would not allow him to proceed to trial on only the Section 924(c)(1)(A) charge and enter into a plea bargain on the remaining charges.  (February 18, 2014 filing at 4-5.)

As his fifth claim, Petitioner asserts that his delay in raising the third and fourth claims is the result of ineffective assistance provide by his trial counsel in 2004 and 2005, namely, because trial counsel failed to apprise Petitioner of his innocence with respect to the Section 924(c)(1)(A) charge  and that "he could have in fact proceeded to trial on whatever crime he felt he wanted to have a jury of his peers find him guilty of."  Petitioner also faults his appellate counsel for failing to raise his third and fourth claims on appeal.  Petitioner asserts that he only realized he possessed his third and fourth claims nearly ten years after he was convicted. (February 18, 2014 filing at 6.)

**DISCUSSION**

I.     The Threshold Jurisdictional Issue

A motion under 28 U.S.C. § 2255 ("Section 2255") generally is the exclusive post-appeal

mechanism by which a federal prisoner may challenge the *legality* of his conviction or sentence. *See* Muth v. Fondren, 676 F.3d 815, 818 (9th Cir.), *cert. denied*, 133 S. Ct. 292 (2012); Harrison v. Ollison, 519 F.3d 952, 955 (9th Cir. 2008).  A 28 U.S.C. § 2241 ("Section 2241") habeas petition may be filed by a federal prisoner to attack the "execution of his sentence," but not to attack its validity.  White v. Lambert, 370 F.3d 1002, 1009 (9th Cir. 2004); Hernandez v. Campbell, 204 F.3d 861, 864 (9th Cir. 2000)(same); *see also* Porter v. Adams, 244 F.3d 1006, 1007 (9th Cir. 2001) (noting that Section 2241 is available only to challenge the manner of execution of a prisoner's federal sentence, not its legality).

There is "one exception" to the generally exclusive nature of the Section 2255 remedy for federal prisoners who wish to challenge the validity of their convictions and/or sentences. Stephens v. Herrera, 464 F.3d 895, 897 (9th Cir. 2006).  Section 2255 contains a "savings clause" or "escape hatch," which allows a federal prisoner to seek Section 2241 relief when a Section 2255 motion is "inadequate or ineffective to test the legality of his detention."  *See id.*; *see also* Muth, 676 F.3d at 818; Harrison, 519 F.3d at 956.  A finding that Section 2255 is an inadequate or ineffective remedy constitutes "a narrow exception" to the rule that Section 2255 provides a federal prisoner's exclusive remedy for challenging a conviction and/or sentence.  United States v. Pirro, 104 F.3d 297, 299 (9th Cir. 1997); *see also* Ivy v. Pontesso, 328 F.3d 1057, 1069 (9th Cir. 2003).  The petitioner bears the burden of proving the inadequacy or ineffectiveness of the Section 2255 remedy.  *See* Redfield v. United States, 315 F.2d 76, 83 (9th Cir. 1963).

As the Ninth Circuit observed in Muth, the question of whether a petition is properly brought under Section 2241, rather than Section 2255, has "important implications" due to differing procedural requirements for these two remedies.  Muth, 676 F.3d at 818 (discussing the procedural limitations applicable to Section 2255 motions and from which Section 2241 petitions are exempt).  The distinction between Section 2255 motions and Section 2241 petitions impacts not only the type of relief available and the applicable procedural limitations but also carries a jurisdictional component.  Section 2255 motions must be heard in the federal district in which the

prisoner was convicted and sentenced, while Section 2241 petitions must be heard in the federal district in which the prisoner is confined.  *See id.*; Hernandez, 204 F.3d at 864-65.  As a result, a district court faced with a federal prisoner's Section 2241 challenge to the legality of his conviction and/or sentence must first decide, "before proceeding to any other issue," whether the relief requested may be sought under Section 2241.  *Id.* at 865; see also Muth, 676 F.3d at 818 ("Before proceeding to the merits of a § 2241 petition ostensibly brought pursuant to the 'escape hatch' of § 2255, a district court must resolve the threshold question whether a petition was properly brought under § 2241 or whether the filing should instead be construed as a § 2255 motion.").[7]

## II.   Section 2241 Jurisdiction Is Lacking.

The claims alleged in the Petition directly challenge the validity of Petitioner's Conviction and Sentence imposed nine years ago in the Northern District of Illinois.  As a result, Section 2241 jurisdiction does not exist in this case unless Petitioner has met his burden of showing that Section 2255's savings clause applies and/or that Section 2241 somehow otherwise applies.  He has not done so and, more importantly, cannot do so.

### A.   The Section 2255 "Escape Hatch"

Section 2255 provides that:

---

[7]   Respondent urges the Court to deny and dismiss the Petition under the abuse of the writ doctrine.  If jurisdiction existed, this case might be an appropriate candidate for invocation of that doctrine, given Petitioner's repetitious assertion of the same claims in different districts.  Moreover, the Court is troubled by Petitioner's numerous misrepresentations regarding the contents of critical documents, as described herein.  As discussed, his assertion that he was not convicted of aggravated discharge of a firearm is plainly belied by the transcript on which he relies, and his representation that he was not charged with a battery involving bodily harm is equally false.  Nonetheless, given the Court's conclusion that it lacks jurisdiction to consider the Petition, it will not rule on the abuse of the writ issue.

An application for a writ of habeas corpus on behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion *is inadequate or ineffective to test the legality of his detention*.

28 U.S.C. § 2255(e) (emphasis added).

The Ninth Circuit has construed the "inadequate or ineffective" language narrowly and made clear that it does not serve as a mechanism for either circumventing the procedural limitations on Section 2255 motions or obtaining a second chance to present a claim already denied on the merits. *See, e.g.,* Ivy, 328 F.3d at 1059; Lorentsen v. Hood, 223 F.3d 950, 953 (9th Cir. 2000).  The Ninth Circuit has concluded that the Section 2255 remedy qualifies as inadequate or ineffective *only* "'when a petitioner (1) makes a claim of actual innocence, and (2) has not had an unobstructed procedural shot at presenting that claim.'" Harrison, 519 F.3d at 959 (citation omitted); *see also* Muth, 676 F.3d at 819 (a petitioner "must satisfy both of these requirements" to get through the Section 2255 escape hatch).

With respect to the first requirement, to establish actual innocence within the meaning of the Section 2255 savings clause, a petitioner must show, by a preponderance of the evidence, "'that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" Stephens, 464 F.3d at 898 (citation omitted); Ivy, 328 F.3d at 1060; Lorentsen, 223 F.3d at 954.  Factual innocence, not legal insufficiency, is required.  *Id.*  To successfully establish factual innocence for purposes of the Section 2255 escape hatch, a petitioner must proffer "evidence tending to show that he did not commit the [crimes] underlying his convictions." Marrero v. Ives, 682 F.3d 1190, 1192-93 (9th Cir. 2012), *cert. denied* 133 S. Ct. 1264 (2013). A claim that a petitioner was wrongly sentenced as a career offender under the Sentencing

14

Guidelines does *not* constitute a cognizable assertion of actual innocence for purposes of invoking Section 2255's savings clause. *Id.* at 1193 (holding:  a claim that petitioner was incorrectly treated as a career offender, because two of his prior convictions should not have been utilized to make the career offender determination, "is a purely legal claim that has nothing to do with factual innocence," and "it is not a cognizable claim of 'actual innocence' for the purposes of qualifying to bring a § 2241 petition under the escape hatch").

With respect to the second requirement, *i.e.,* whether a petitioner did not have an unobstructed procedural shot at presenting his claim, a federal court faced with a Section 2241 petition must determine:  "(1) whether the legal basis for petitioner's claim did not arise until after he had exhausted his direct appeal and first § 2255 motion; and (2) whether the law changed in any way relevant to petitioner's claim after that first § 2255 motion." Harrison, 519 F.3d at 960 (internal quotation marks omitted).  The mere fact of a relevant, intervening court decision does not establish that a petitioner failed to have an unobstructed procedural shot unless the subsequent decision "effect[s] a material change in the applicable law." *Id.*; see also Alaimalo v. United States, 634 F.3d 1042, 1048 (9th Cir. 2011).  If a subsequent decision merely "provides further clarification" of the law underlying the conviction but does not "materially vary from" prior case law, the lack of an unobstructed procedural shot requirement is not satisfied.  Harrison, 519 F.3d at 960.  "[I]t is not enough that the petitioner is presently barred from raising his claim of innocence by motion under § 2255.  He must never have had the opportunity to raise it by motion." Ivy, 328 F.3d at 1060.

       B.      The Petition Is A Disguised, Successive Section 2255 Motion, And The Section 2255 "Escape Hatch" Is Inapplicable.

None of the claims alleged in the Petition satisfy the requirements for invoking Section 2255's savings clause, for the following reasons:

1            1.      The First And Second Claims

2

3        The first and second claims in the Petition rest on the premise that Petitioner's prior Illinois

4   convictions -- including the Illinois Aggravated Battery Conviction -- cannot serve as bases for

5   finding him to be a career offender, and thus, his ACCA-enhanced sentence is improper.  These

6   two claims do not, and cannot, satisfy the two requirements discussed above, and in any event,

7   comity dictates that they not be considered by this Court.

8

9        First, with respect to the actual innocence prong, Marrero makes clear that Petitioner's first

10  and second claims do not raise claims that are cognizable under Section 2241 pursuant to the

11  Section 2255 escape hatch.  *See* Green v. Thomas, 485 Fed. Appx. 888, 889 (9th Cir. Oct. 16,

12  2012) (claim that petitioner was actually innocent of being a career offender under U.S.S.G. §

13  481.1 and, therefore, should be allowed to proceed under Section 2241 was "foreclosed" by

14  Marrero, and Section 2241 petition was properly dismissed).  Petitioner's first and second claims --

15  that his Illinois Aggravated Battery Conviction does not constitute a "violent felony," and that he

16  received a notice of civil rights restoration related to his three Illinois convictions -- raise a legal

17  attack on his Sentence, rather than a claim that he is innocent of the crimes of which he stands

18  convicted, and they do not raise a cognizable assertion of actual innocence for purposes of

19  opening the Section 2255 escape hatch.

20

21       Second, Petitioner's assertion that he meets the second/lack of an unobstructed procedural

22  shot requirement, because he was foreclosed from bringing his first and second claims until

23  various Supreme Court and Circuit Court decisions issued over the past few years, is unavailing.

24  With respect to Petitioner's first claim, Petitioner argues that it was the Supreme Court's 2013 and

25  2010 decisions in, respectively, Descamps and Johnson that gave rise to his claim that the Illinois

26  Aggravated Battery Conviction does not constitute a "violent felony" under the ACCA.  This

27  argument is meritless, because these decisions did not effect a material change in the applicable

28  law under the facts and circumstances of Petitioner's case.

16

In _Johnson_, the Florida crime of battery could be committed in three ways, including by actually and intentionally touching another against his or her will.  The documents of record did not show the manner in which Johnson committed the battery deemed to constitute a "violent felony" for purposes of his ACCA-enhanced sentence. and thus, it was possible he was convicted based upon the statutory predicate of  actual and intentional touching of another against his or her will.  The Supreme Court addressed whether a battery committed pursuant to that predicate satisfied ACCA's violent felony requirement and concluded that it did not, because state law deemed that predicate to be satisfied by any contact -- _no matter how slight_ -- and the Supreme Court found that such slight contact was insufficient to constitute a violent crime.  133 S. Ct. at 1269-72.   Significantly, the Supreme Court observed that, under its preexisting "modified categorical approach," courts can determine which of possible alternate statutory bases for a crime constituted the predicate for the conviction, and thus determine whether or not the crime is a "violent felony" under the ACCA, as long as the state record is sufficient to make such a finding.  _Id._ at 1273.  In _Descamps_, the Supreme Court made clear that the modified categorical approach applies to state criminal statutes that are divisible -- _i.e.,_ those statutes that set out the elements of an offense in the alternative -- and this approach permits federal sentencing courts to consult state court records, such as indictments, to determine whether the state conviction constitute a violent felony under the ACCA.  133 S. Ct. at 2281.

Neither _Johnson_ nor _Descamps_ effected a material change in the law giving rise to any claim now presented by Petitioner, because the state record plainly shows that the Illinois Aggravated Battery Conviction constitutes a "violent felony."   The indictment and complaint charged that a battery was committed in violation of 720 Ill. Comp. Stat. § 12/5-3(a)(1), in that, while the victim was on a public way, Petitioner knowingly "caused bodily harm" when, without legal justification, he "struck [her] about the body with a blunt object" and this rendered the battery aggravated in violation of 720 Ill. Comp. Stat. § 5/12-4(b)(8).  (Answer Ex. 25 at 425-26.) Section 12/5-3(a) sets forth a crime that is divisible within the meaning of the above-discussed Supreme Court precedent:  under subpart (1), battery is committed by knowingly and without

17

legal justification causing bodily harm to an individual; and under subpart (2), battery is committed by making physical contact of an insulting and provoking nature with an individual. Petitioner was expressly charged under subpart (1); his assertion (original Petition at 2-3) that he was charged, instead, under subpart (2) is an egregious and inexcusable misrepresentation.  As the Seventh Circuit has made clear, a violation of Section 5/12-3(a)(1) -- the crime of which Petitioner was convicted -- *is* a violent felony for ACCA purposes.  Hill v. Werlinger, 695 F.3d 644, 649-50 (7th Circuit 2012) (affirming dismissal of Section 2241 petition for lack of jurisdiction that raised the same claim as Petitioner makes here -- *i.e.,* that a sentence was erroneously enhanced by reliance on a prior Section 5/12-3(a)(1) conviction as a violent felony under the ACCA -- and holding that the claim would fail on its merits were there jurisdiction to consider it).

In short, Petitioner's first claim is, and always has been, factually and legally frivolous; nothing in Johnson or Descamps gives life to the claim.  Indeed, given the Supreme Court's confirmation that state charging documents may be relied on in making the ACCA violent felony determination, both decisions only undermine Petitioner's first claim.  Petitioner's procedural shot at bringing his first claim was not obstructed by any adverse law that subsequently underwent a material change; rather, the claim was, and remains, unavailable because it lacks merit.  Accordingly, the second requirement for invoking the Section 2255 savings clause cannot be met with respect to Petitioner's first claim, and jurisdiction over the claim thus is lacking..

The same conclusion must be drawn with respect to Petitioner's second claim.  As a threshold matter, Petitioner has failed to produce the alleged "notice" of the restoration of his rights on which his second claim hinges.  He does allege, however, that he received such notice when he was discharged from parole in 1998 and 1999 (original Petition at 7), and the Court will assume for purposes of argument that such notice was received in that time frame.  Given that Petitioner did not sustain the Conviction and Sentence at issue until 2005, he plainly could have raised his "notice" of restoration of rights argument at any time before he was sentenced, in his appeal, or in his Section 2255 Motion.  Put otherwise, Petitioner had a timely procedural shot he

18

1   could have taken, but failed to take it.

2

3       Petitioner argues that his ability to raise his second claim was obstructed by the Seventh
4   Circuit's decision in United States v. Gillaum, 372 F.3d 848 (9th Cir. 2004), because that decision
5   constituted law that "was against him" until it was later obviated by Buchmeier. (Original Petition
6   at 6-7.)   Gillam held that, for purposes of the statute on which Petitioner relies (18 U.S.C. §
7   921(a)(20)), a defendant's civil rights are restored only if the notice restores three rights -- the
8   right to vote, hold office, and serve on a jury.  Id. at 860.  Petitioner, however, expressly alleges
9   that the notice he received did restore these same three rights.  (Id. at 7.)  Gillaum, therefore,
10  never constituted an impediment to Petitioner's ability to bring his second claim,[8] and the
11  subsequent Buchmeier/Burnett decisions by the Seventh Circuit, on which he relies, did not
12  remove any obstruction.  Put otherwise, Petitioner could have raised his second claim at any time
13  before and after he was convicted and sentenced, including in his first Section 2255 Motion; he
14  simply failed to do so.  Thus, his second claim cannot meet the second requirement for opening
15  the Section 2255 escape hatch and this Court lacks jurisdiction to consider it under Section 2241.

16

17      Finally, the Court notes that Petitioner already, and unsuccessfully, has raised versions of
18  his first and second claims in numerous other courts.  Petitioner raised his first claim in his First
19  2241 Motion and Second 2241 Motion brought in the District of Minnesota, and that court
20  concluded that Petitioner had not shown that the Section 2255 remedy was inadequate and
21  ineffective.  When Petitioner raised his first claim a third time in a different court (the Southern
22  District of Indiana), it was rejected for the same reason.  Petitioner twice sought leave in the
23  Seventh Circuit to raise the first claim through a second or successive Section 2255 motion, and
24  both times, the Seventh Circuit declined to grant him such permission.  Petitioner raised his
25  second claim in the Sentencing Court through his Rule 52(b) Motion, and the Sentencing Court

26

27  ─────────────────────
28      [8]     Indeed, in his Reply, Petitioner concedes that Gillaum did not prevent him from
    raising his second claim at an earlier date.  (Reply at 2, 5.)

19

concluded that his assertion of the claim constituted a disguised, and unauthorized, successive Section 2255 motion.  There is no evidence that Petitioner thereafter sought leave from the Seventh Circuit to bring the second claim through a second or successive Section 2255 motion.

In sum, two other district courts and the Seventh Circuit have repeatedly found that the first and second claims alleged in the Petition may be brought only under Section 2255, and not under Section 2241, but Petitioner has not obtained leave to do so from the Seventh Circuit, which is the only federal court that could grant such leave.  Rather than appeal the adverse decisions of the District of Minnesota and the Southern District of Indiana, Petitioner waited until he was transferred to this district and then re-raised claims that several courts already have determined may not be raised under Section 2241.  Raising these same claims in this district is an improper attempt at getting a second bite of the apple from another court.  Even if Section 2241 jurisdiction were not lacking (and it is), comity plainly would preclude such blatant forum-shopping.

## 2.    The Third, Fourth, And Fifth Claims

The third through fifth claims in the Petition rest on the premise that Petitioner is actually innocent of two of the offenses to which he pleaded guilty.  The Court need not address the first requirement for invoking the Section 2255 savings clause (actual innocence) with respect to these three claims, because it is plain that the second requirement -- the lack of a prior unobstructed procedural shot at bringing the claims -- is not, and cannot be, met.

Plaintiff's assertion that he is actually innocent of the Count One/18 U.S.C. § 922(g)(1) violation (unlawful possession of a firearm by a felon) and the Count Three/18 U.S.C. § 924(c)(1)(A) violation (possession of a firearm in relation to a drug trafficking crime) stems from  the following unsworn factual contentions set forth in the February 18, 2014 amendment to the Petition.  Petitioner asserts that:  the two crimes stem from the execution of a search warrant at his residence by the Joliet, Illinois police; the firearm in question was found in his bedroom; he

and his wife "shared occupancy" of this bedroom; at the time the warrant was executed and in Petitioner's presence, Petitioner's wife claimed that the firearm found by the police belonged to her; and at Petitioner's first court appearance, his wife attempted to "make a claim" that the firearm belonged to her, not Petitioner. (February 18, 2014 filing at 2, 7.) Petitioner contends that the Government was aware of both his wife's claim of ownership of the firearm and the "shared occupancy" of the residence before he was charged, yet it failed to "disclose" to Petitioner that, due to his wife's claim, the evidence was not sufficient to show Petitioner actually or constructively possessed a firearm and the firearm related to drug trafficking. (*Id.*) He further contends that the above-asserted facts:  render him actually innocent of these two crimes (third claim); render his guilty plea to the Section 924(c)(1)(A) violation involuntary, unknowing, and coerced (fourth claim); and his delay in raising these claims is excused by the failure of his trial and appellate counsel to advise him of his innocence of the Count One and Count Three charges (fifth claim).

Petitioner admittedly was aware of the factual bases for his third through fifth claims as far back as 2004, when the search warrant was executed at his "shared occupancy" residence and his wife appeared at his initial court appearance and, in both instances, proclaimed in Petitioner's presence that the gun to belong to her.  He was aware of these facts when he pleaded guilty to the two crimes as to which he now claims actual innocence.  During his plea hearing, the Government's attorney represented that Petitioner "knowingly possessed [the three firearms recovered along with drugs and drug paraphernalia] and admitted to the Joliet police officer -- or made statements to the effect  acknowledging -- that the firearms were his and he knowingly possessed them," and Petitioner "possessed those firearms to further his drug distribution" and "to protect his drug supply that he kept at his house" and "kept those firearms in proximity to the drugs and did so knowingly."  When the Sentencing Court asked Petitioner if he disagreed with any part of the Government lawyer's statement, Petitioner responded "No," and when the Sentencing Court asked Petitioner if he was, in fact, guilty of the charged crimes, Petitioner responded, "Yes, I am," and expressly pleaded guilty to Counts One and Three.  (Answer Ex. 4

at 49-51.)   During his presentence interview, Petitioner again confirmed that the factual allegations of the superseding indictment -- which included allegations that Petitioner knowingly possessed three firearms in furtherance of a drug trafficking crime -- were true.  (Answer Exs. 3 and 28 at 444.)

In short, Petitioner could have raised his third through fifth claims at any time following his Conviction, whether on direct appeal or in his initial Section 2255 Motion.  Indeed, two of the three Ninth Circuit cases he cites in support of his third claim were decided and published in 1990 -- 15 years before he was convicted.  (February 18, 2014 filing at 7.)  Petitioner *did* raise a claim on appeal on a *pro se* basis that his guilty plea was involuntary and unknowing, which the Seventh Circuit found to be "plainly frivolous," and he *did* raise an ineffective assistance of counsel claim in the *pro se* Section 2255 Motion (albeit on a different theory), thus demonstrating his ability to formulate these types of claims on a *pro se* basis, regardless of any alleged failure by his trial and appellate attorneys to advise him that he might raise such claims.

Petitioner does not, and could not truthfully, allege that he has "never had the opportunity to raise" his third through fifth claims in a Section 2255 motion.  Ivy, 328 F.3d at 1060 ("[I]t is not enough that the petitioner is presently barred from raising his claim of innocence by motion under § 2255.  He must never have had the opportunity to raise it by motion.").  For whatever reason, Petitioner did not attempt to raise these claims in the Sentencing Court through a Section 2255 motion.  Whether or not such a motion would be cognizable or barred is beside the point; the fact is that he has never attempted to pursue Section 2255 relief based on these claims, although he could have done so, and thus, there is no basis for finding Section 2255 relief to be inadequate and ineffective under these circumstances. *See id.*  Accordingly, Section 2241 jurisdiction for these claims does not exist in this district based on the Section 2255 escape hatch.

1        **B.      No Independent Basis for Section 2241 Jurisdiction Exists.**

2

3        The central purpose of the writ of habeas corpus is to provide a remedy to prisoners

4  challenging the fact or duration of their physical confinement and seeking immediate release or

5  an earlier release. Preiser v. Rodriguez, 93 S. Ct. 1827, 1833 (1973) ("the essence of habeas

6  corpus is an attack by a person in custody upon the legality of that custody, and . . . the

7  traditional function of the writ is to secure release from illegal custody").  Section 2241 confers

8  a general grant of habeas jurisdiction when a federal or state prisoner contends he "is in custody

9  in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(a) and

10 (c)(3); see also White, 370 F.3d at 1006.  As noted earlier, the federal courts have construed this

11 general grant to encompass a federal prisoner's right to attack the "execution of his sentence,"

12 but not its validity. Id. at 1009; Hernandez, 204 F.3d at 864; see also Porter, 244 F.3d at 1007.

13

14       The Petition does not challenge the manner of the execution of Petitioner's sentence.

15 Petitioner challenges the validity of his Sentence through claims that are not cognizable under

16 Section 2241.  Because Section 2241 jurisdiction is lacking in this Court, it is clear that the Petition

17 must be dismissed without prejudice.[9]

18

19       IT IS ORDERED that:  (1) the Petition is dismissed without prejudice for lack of jurisdiction;

20 (2) Judgment shall be entered dismissing this action; and (3) a certificate of appealability is not

21 warranted and, thus, is denied.  See Porter, 244 F.3d at 1007.

22

23       _____

24       [9]      Dismissal without prejudice, rather than transfer to the Sentencing Court, is
   appropriate.  Transfer pursuant to 28 U.S.C. § 1631 would be warranted only if three conditions
25 were satisfied:  (1) this Court lacks jurisdiction; (2) the Sentencing Court could have exercised
   jurisdiction over the Petition at the time it was filed; and (3) a transfer would be in the interest
26 of justice. See Cruz-Aguilera v. INS, 245 F.3d 1070, 1074 (9th Cir. 2001). The Sentencing Court
   would have no jurisdiction to consider the Petition, because Petitioner has not obtained leave from
27 the Seventh Circuit to raise the claims alleged in the Petition through a second or successive
   Section 2255 motion. See Burton v. Stewart, 127 S. Ct. 793, 799 (2007). Accordingly, as transfer
28 would be futile, neither the second nor third requirements for a Section 1631 transfer are
   satisfied, and dismissal is required instead.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on the parties.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: September 10, 2014.

*Margaret A. Nagle*

MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

24